JOHN W. HUBER, United States Attorney (#7226)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
ALLISON J.P. MOON, Assistant United States Attorney (#15204)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682



FILED
DISTRICT COURT

2018 FEB 15 P 1: 27

DISTRICT OF UTAH
**SEALED**
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARC ANDREW TAGER,<br>MATTHEW EARL MANGUM,<br>JONATHAN EDWARD SHOUCAIR,<br>KENNETH S. GROSS, and<br>JASON VITOLO a/k/a JASON TAVANO<br><br>Defendants. | FELONY INDICTMENT<br><br>Count 1: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud, and Mail Fraud)<br><br>Counts 2-6: 18 U.S.C. §§ 1343 (Wire Fraud) and 2(a)-(b) (Aiding and Abetting)<br><br>18 U.S.C. §§ 2325-2327 (Telemarketing Fraud Allegation)<br><br>Counts 7-15: 18 U.S.C. §§ 1341 (Mail Fraud) and 2(a)-(b) (Aiding and Abetting)<br><br>Counts 16-31: 18 U.S.C. §§ 1957 (Money Laundering) and 2(a)-(b) (Aiding and Abetting) |

The Grand Jury charges:

Case: 2:18-cr-00097
Assigned To : Benson, Dee
Assign. Date : 2/15/2018
Description:

**Count 1**
**18 U.S.C. § 1349**
**(Conspiracy to Commit Wire Fraud, and Mail Fraud)**

### I.  BACKGROUND

At all times relevant to this Indictment:

1.  Defendants MARC ANDREW TAGER ("TAGER") and MATTHEW EARL

MANGUM ("MANGUM") were residents of Salt Lake County, Utah.

2. Defendants JONATHAN EDWARD SHOUCAIR ("SHOUCAIR"), KENNETH S. GROSS ("GROSS"), and JASON VITOLO a/k/a JASON TAVANO ("VITOLO") were residents of Los Angeles County, California.

3. Jersey Consulting LLC ("Jersey") was a limited liability company doing business in the state of Utah. The Defendants operated website jerseyconsultingllc.com that, among other things, promoted Jersey and its business. Jersey purported to function as a precious metal refining business.

4. Defendant TAGER was the Managing Director and Registered Agent of Jersey and held power of attorney for Jersey.

5. Defendant MANGUM was the "Chief Development Officer" of Jersey and held himself out to be an expert in the mining industry and the refinement of precious metals.

6. Defendant SHOUCAIR was involved in all aspects of the design, development and marketing of the Jersey investment offering and produced promotional materials for inclusion in mailings to investors.

7. Defendants SHOUCAIR, GROSS, and VITOLO were "raisers" for Jersey, also known as brokers, promoters, and solicitors. These three defendants solicited investments from individuals from across the country on behalf of Jersey.

8. The Defendants were engaged in promoting Jersey through, among other methods, the Internet, telemarketing, emails, and mass mailing newsletters to investors.

9. "Telemarketing" as used in this Indictment means a plan, promotion, or campaign that is conducted to induce (1) purchases of goods and services, or (2) participation in an investment opportunity, by use of one or more interstate telephone calls initiated either by a

person who is conducting the plan, program or promotion, or campaign or by a prospective purchaser or investor.

## II. THE CONSPIRACY

10. From an unknown date on or about late 2014, and continuing through February 14, 2018, in the Central Division of the District of Utah and elsewhere,

**MARC ANDREW TAGER,**
**MATTHEW EARL MANGUM,**
**JONATHAN EDWARD SHOUCAIR,**
**KENNETH S. GROSS,** and
**JASON VITOLO a/k/a JASON TAVANO**

defendants herein, did knowingly and willfully combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, with interdependence among the members of the conspiracy, to commit a fraud crime listed in United States Code, Title 18 Chapter 63, namely: Wire Fraud in violation of Title 18, United States Code, Section 1343; and Mail Fraud in violation of 18, United States Code, Section 1341.

## III. OBJECTS OF THE CONSPIRACY

11. The objects of the conspiracy were for the Defendants, and others known and unknown to the Grand Jury, to defraud investors by inducing them to invest in a precious metals refining business through material misrepresentations and omissions about the business and its management; specifically promising investors that they could double their money in 12 months. The conspirators would then use the money for the own personal benefit, enrich each other, take steps to conceal the conspiracy, and fail to repay investors.

## IV. MANNER AND MEANS OF THE CONSPIRACY

12. In execution and furtherance of the conspiracy, defendants TAGER, MANGUM, SHOUCAIR, GROSS, and VITOLO, together with others, employed the following manner and

means:

13. Through telemarketing and other means, the Defendants promoted, offered, and sold fraudulent investments in Jersey to approximately 100 investors throughout the United States.

14. The Defendants used telephones, fax machines, the Internet and the U.S. Mail to solicit and communicate with investors.

15. The Defendants collected approximately $8 million from approximately 100 investors from across the United States in connection with the Jersey investment offering.

16. The Defendants represented to investors that Jersey had a proprietary "green" method of ore processing using nanotechnology that could produce high yields of gold, silver, platinum and palladium.

17. The Defendants represented to investors that Jersey had a breakthrough in the process that yielded significant results much higher than industry standards.

18. The Defendants represented to investors that defendant MANGUM was knowledgeable and experienced in the field of nanotechnology as well as refining technology.

19. The Defendants represented to investors that Jersey operated a refining site located in West Jordan, which was equipped with an industrial furnace.

20. The Defendants represented to investors that Jersey's proprietary process for refining ore worked, was viable, and would generate huge returns.

21. The Defendants represented to investors that the investors could enter into a "Royalty Interest Payment Agreement" with Jersey that would yield an investment return of 100% in twelve months.

22. When the Defendants failed to make payments in a timely fashion to investors,

the Defendants then promised 125%, 200%, 250%, and up to a 500% returns to those investors in exchange for extensions.

23.     The Defendants represented to investors that the investors could receive their investment returns in either U.S. Currency or in gold, silver, platinum or palladium.

24.     Defendants SHOUCAIR, GROSS, and VITOLO, as well as other raisers, were the original contacts for many of the investors. Investors who were interested in the Royalty Interest Payment Agreement would be referred to defendants TAGER and MANGUM who then "closed" the deals. Defendants TAGER, MANGUM, and VITOLO all signed one or more Royalty Interest Payment Agreements.

25.     In order to convince investors to invest and that their investments with Jersey were succeeding, the Defendants issued and mailed monthly "Investor Newsletters" to investors. These newsletters made a number of material misrepresentations about the nature of Jersey's business, its success, and the extent of its refinement of gold. For example:

> (a)     The December 2014 Jersey Vol. 4 Newsletter states, "Jersey Consulting LLC has a Royalty Interest Program that can double an investor's money in 12 months or less REGARDLESS OF THE PRICE OF GOLD!";

> (b)     The February 2015 Jersey Vol. 6 Newsletter displays a chart entitled "ACTUAL REVENUES OF JERSEY CONSULTING LLC". Under 2013 it lists the following revenue figures: Jul $10,680; Aug $12,760; Sep $17,821; Oct $18,132; Nov $23,750; Dec $27,246. Under 2014 it lists the following revenue figures: Jan $32,484; Feb $37,587; Mar $44,873; Apr $49,688; May $56,170; Jun $59,582; Jul $65,211; Aug $71,363; Sep $75,559; and

> (c)     The May 2015 Jersey Vol. 9 Newsletter states, "Here is a snapshot of the week of April 27 -May 1, 2015: One (1) ton of processed ore yielded 16 oz of gold ($18,400) 32 oz of platinum ($35,200) 16 oz of palladium ($11,200) and 16 oz of silver ($240) Total Gross Revenue $65,040 Estimated Overhead $10,000 Net Weekly Revenue $55,040. Within the next 3 weeks we will have all equipment in our first set of 9 operational at which point production levels will increase dramatically.

26.     Many investor payments were deposited into Jersey's Chase bank account ending

in xxx-5072 and its Chase bank account ending in xxx-6773. Defendant TAGER is the signor on both accounts. Thousands of dollars of investor money were then transferred to defendants MANGUM, SHOUCAIR, GROSS, and VITOLO, as well as other raisers.

27.     In furtherance of the conspiracy, the Defendants made one or more of the following false and fraudulent statements of material fact to investors, including, without limitation, the following:

(a)     Jersey owned an 80-acre claim within the corridor connecting Utah, Nevada and Arizona with "a substantial amount of mineral rich ore" available for mining and refining; when in fact, Jersey did not own any claim or mineral leases or mining rights;

(b)     Jersey processed, smelted and refined hundreds of pounds of material daily and weekly; when in fact, Jersey's refinement of any precious metals was minimal and not enough to pay for business and operating expenses;

(c)     Jersey contracted with refining company C.M.C. to smelt hundreds of tons of material monthly; when in fact, C.M.C. did not process or refine material for rare minerals but was a steel recycling company with no agreement with Jersey;

(d)     Senior managers of company M.T., one of the world's largest refiners, visited Jersey's processing facility and mine site on numerous occasions to conduct due diligence and were "prepared to begin taking receipt of" Jersey's metal; when in fact, Jersey had no mine site, only a M.T. salesperson visited the Jersey processing site in West Jordan, M.T. determined that Jersey did not produce material that contained a sufficient quantity of precious metal, and M.T. had no interest in refining for Jersey;

(e)     Defendant MANGUM was an expert in refining technology and obtained a degree in electronics engineering from University of Utah; when in fact, defendant MANGUM is a high school dropout with no degree from the University of Utah;

(f)     Investments in Jersey would be secured by Jersey's physical assets in the form of equipment, investors would be positioned "in first place" with respect to the equipment, and the value of the equipment was far in excess of the investments being made; when in fact, there were approximately 100 investors throughout the United States who had invested approximately $8 million in Jersey and these investors were all promised the same Jersey assets as security for their investments, the value of which assets was far less than $8 million; and

(g)   Investment monies would be used to refine precious metal, cover operational expenses, conduct research and development, and expand sales, marketing and promotional operations; when in fact, the Defendants used investor funds for their own personal use, personal living expenses, and personal benefit.

28.   Defendant GROSS represented to at least one investor the he would not accept his 5% broker commission until this investor was paid out from the Jersey investment; when in fact, defendant GROSS received and accepted a 10% broker commission almost immediately after the investor invested with Jersey and the investor never received any investment returns from Jersey.

29.   In furtherance of the conspiracy, the Defendants failed to disclose to investors the following material facts, among others:

(a)   Defendant TAGER is a convicted felon. On or about September 1, 2005, defendant TAGER pleaded guilty in federal court to Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 371. *See* U.S. District Court, Northern District of Texas (Dallas), case number 3:04-CR-028-K (01). Moreover, a federal district court judge entered a restitution judgment against defendant TAGER in the amount of $1,131,019.00. As of late 2017, the outstanding balance of that restitution order was $949,899.39;

(b)   Defendant VITOLO is a convicted felon. On or about January 27, 2006, defendant VITOLO pleaded guilty in federal court to Conspiracy to Deal in Counterfeit Currency in violation of 18 U.S.C. § 371. *See* U.S. District Court, Eastern District of New York, case number 1:06-cr-00003-CBA;

(c)   Defendant SHOUCAIR is a convicted felon. On or about July 16, 2003, defendant SHOUCAIR pleaded guilty in federal court to Conspiracy to Commit Wire Fraud, Mail Fraud, Securities Fraud & Conspiracy to Defraud Agencies of the United States in violation of 18 U.S.C. § 371; Wire Fraud in violation of 18 U.S.C. § 1343; Mail Fraud in violation of 18 U.S.C. § 1341; and Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). *See* U.S. District Court, Southern District of California, case number 3:01-CR-01415. Moreover, a federal district court judge entered a restitution judgment against defendant SHOUCAIR in the amount of $49,050,378.00. Additionally, on or about July 16, 2003, defendant SHOUCAIR pleaded guilty in federal court to Evasion of Individual Income Taxes in violation of 26 U.S.C. § 7201. *See* District Court, Southern District of California, case number 3:03-CR-1950-BTM;

(d)   Defendant GROSS was sued by the United States Securities Exchange Commission ("SEC") in 2014 for, *inter alia,* selling unregistered securities. On or about March 17, 2014, a final judgment was entered by consent against

defendant GROSS, permanently enjoining him from future violations of Sections 5(a) and (c) of the Securities Act of 1933 and Section 15(a) of the Exchange Act. *See SEC v. Robert Hurd, et al.*, Civil Action Number 2:13-CV-04464-RGK-JCG, in the United States District Court for the Central District of California;

(e)   The Utah Division of Securities initiated an investigation into Jersey's business practices as well as the Defendants and conducted a face-to-face interview of defendant TAGER on March 14, 2017; and

(f)   On a routine basis, and for years, investors did not timely receive their investment returns as promised per their Royalty Interest Payment Agreements.

## V.   OVERT ACTS

30.   In furtherance of the conspiracy and in order to achieve the objects of their conspiracy, the Defendants, together with others known and unknown to the Grand Jury, aiding and abetting each other, used and caused the use of wire communications in interstate and foreign commerce and the United States mails and commercial interstate carriers, to communicate with each other, with banks, and with investors.

31.   Overt acts in furtherance of the conspiracy and attempts to further said conspiracy are also outlined in the allegations and counts charged in this Indictment.

All in violation of Title 18, United States Code, Section 1349.

### Counts 2-6
### 18 U.S.C. §§ 1343 and 2(a) and (b)
### (Wire Fraud)

32.   All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

33.   On or about the date listed in each count below, in the Central Division of the District of Utah and elsewhere,

**MARC ANDREW TAGER,**
**MATTHEW EARL MANGUM,**
**JONATHAN EDWARD SHOUCAIR,**

**KENNETH S. GROSS,** and
**JASON VITOLO a/k/a JASON TAVANO**

defendants herein, together with others known and unknown to the Grand Jury, aiding and abetting each other, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, for the purpose of executing said scheme and artifice to defraud, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, the following writings, signs, signals, pictures, and sounds, in instances including but not limited to each count below:

| COUNT | DATE (on or about) | WIRE COMMUNICATIONS |
|---|---|---|
| 2 | 02/12/2015 | Transfer of $100,000.00 from victim K.H.'s Wells Fargo bank account to Jersey's Chase bank account ending in xxx-5072. |
| 3 | 04/27/2015 | Transfer of $100,000.00 from victim G.K.'s Wells Fargo bank account to Jersey's Chase bank account ending in xxx-5072. |
| 4 | 02/29/2016 | Transfer of $287,500.00 from victim G.K.'s Wells Fargo bank account to Jersey's Chase bank account ending in xxx-5072. |
| 5 | 08/11/2016 | Email from defendant TAGER at marc@jerseyconsultingllc.com, and copying defendant MANGUM at iq2040@hotmail.com, both in Utah, sent to potential investor S.W. in Nevada, with subject line "Jersey Consulting IP Agreement". |
| 6 | 05/31/2017 | Telephone call between victim M.R.'s attorney in South Carolina and defendant TAGER in Utah. |

All in violation of Title 18, United States Code, Sections 1343, 1349, 2(a), and 2(b).

## TELEMARKETING FRAUD ALLEGATION

34.   The allegations contained in Paragraphs 1-33 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging telemarketing fraud pursuant to Title 18, United States Code, Sections 2325, 2326, and 2327. It is alleged that the acts described in Counts 1-6 constitute telemarketing, within the definition of Title 18, United States Code, Section 2325, and that the enhanced penalties at Title 18, United States Code, Section 2326, and

mandatory restitution at Title 18, United States Code, Section 2327, apply.

## Counts 7-15
## 18 U.S.C. §§ 1341 and 2(a) and (b)
## (Mail Fraud)

35. All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

36. On or about the date listed in each count below, in the Central Division of the District of Utah and elsewhere,

**MARC ANDREW TAGER,**
**MATTHEW EARL MANGUM,**
**JONATHAN EDWARD SHOUCAIR,**
**KENNETH S. GROSS, and**
**JASON VITOLO a/k/a JASON TAVANO**

defendants herein, together with others known and unknown to the Grand Jury, aiding and abetting each other, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and omissions of material facts, and for the purpose of executing such scheme and artifice and attempting so to do, did knowingly send and cause to be sent and delivered by the United States Postal Service and any private or commercial interstate carrier, a matter and thing, and did cause such matter and thing to be delivered according to the directions thereon as described for each count below:

| COUNT | DATE (On or About) | MAILING DESCRIPTION |
|---|---|---|
| 7. | 09/15/2014 | $7,500 check #3853 from victim D.H. in Virginia to Jersey Consulting LLC in Utah. |
| 8. | 02/06/2015 | $5,000 check #437 from victim G.M. in Alabama to Jersey Consulting LLC in Utah. |
| 9. | 02/25/2015 | $3,000 check #2274 from victim J.K. in Oregon to Jersey Consulting LLC in Utah. |

| 10. | 04/28/2015 | $60,000 check #2031 from victim K.H. in Arizona to Jersey Consulting LLC in Utah. |
| 11. | 08/27/2015 | $150,000 check #1110 from victim G.K. in Colorado to Jersey Consulting LLC in Utah. |
| 12. | 11/02/2015 | $10,000 check #1385 from victim M.R. in South Carolina to Jersey Consulting LLC in Utah. |
| 13. | 12/18/2015 | $50,000.00 check #1808 from victim G.K. in Colorado to Jersey Consulting LLC in Utah. |
| 14. | 03/24/2016 | $5,000 check #196 from victim P.G. in Oklahoma to Jersey Consulting LLC in Utah. |
| 15. | 09/26/2016 | $10,000 check #1639 from victim S.S. in Washington to Jersey Consulting LLC in Utah. |

All in violation of Title 18, United States Code, Section 1341 and Section 2(a) and 2(b).

## Counts 16-31
### 18 U.S.C. §§ 1957 and 2(a) and (b)
### (Money Laundering)

37.   All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

38.   On or about the following dates, in the Central Division of the District of Utah and elsewhere, the following defendant(s), did knowingly engage and attempt to engage in the following monetary transactions involving funds that were proceeds of criminally derived property of a value greater than $10,000, and were derived from a specified unlawful activity, that is, Wire Fraud and Mail Fraud, as alleged in this Indictment:

| COUNT | DATE (on or about) | MONETARY TRANSACTIONS | Defendant(s) |
|---|---|---|---|
| 16. | 10/06/2014 | $15,000.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to wife of defendant SHOUCAIR | TAGER, SHOUCAIR |
| 17. | 12/29/2014 | $20,000.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to wife of defendant SHOUCAIR | TAGER, SHOUCAIR |

| | | | |
|---|---|---|---|
| 18. | 01/02/2015 | $13,500.00 withdrawal by defendant TAGER from Jersey's Chase bank account ending in xxx-5072 | TAGER |
| 19. | 01/14/2015 | $15,000.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to wife of defendant SHOUCAIR | TAGER, SHOUCAIR |
| 20. | 04/09/2015 | $20,000.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to wife of defendant SHOUCAIR | TAGER, SHOUCAIR |
| 21. | 04/23/2015 | $20,000.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to wife of defendant SHOUCAIR | TAGER, SHOUCAIR |
| 22. | 04/28/2015 | $16,587.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to defendant GROSS | TAGER, GROSS |
| 23. | 05/27/2015 | $20,000.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to wife of defendant SHOUCAIR | TAGER, SHOUCAIR |
| 24. | 07/31/2015 | $15,395.00 withdrawal by defendant TAGER from Jersey's Chase bank account ending in xxx-5072 | TAGER |
| 25. | 09/03/2015 | $36,473.62 wire transfer from Jersey's Chase bank account ending in xxx-5072 to defendant MANGUM | TAGER, MANGUM |
| 26. | 12/23/2015 | $11,700.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to defendant GROSS | TAGER, GROSS |
| 27. | 01/11/2016 | $15,200.00 purchase of cashier's check by defendant TAGER payable to FC Homes LLC. | TAGER, MANGUM |
| 28. | 03/02/2016 | $28,750.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to defendant GROSS | TAGER, GROSS |
| 29. | 04/01/2016 | $20,000.00 purchase of cashier's check by defendant TAGER payable to FC Homes LLC | TAGER, MANGUM |
| 30. | 12/02/2016 | $17,000.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to wife of defendant SHOUCAIR | TAGER, SHOUCAIR |
| 31. | 01/10/2017 | $20,000.00 wire transfer from Jersey's Chase bank account ending in xxx-5072 to wife of defendant SHOUCAIR | TAGER, SHOUCAIR |

All in violation of 18, United States Code, Section 1957 and Section 2(a) and 2(b).

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. §§ 1341, 1343, or 1349 as set forth herein, the defendant shall forfeit to the United States of America all property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud or conspiracy to commit the same. The property to be forfeited includes, but is not limited to, the following:

- A money judgment representing the value of any property, real or personal, constituting or derived from proceeds traceable to the scheme to defraud or conspiracy to commit the same.

Pursuant to 18 U.S.C. § 982(a)(8), upon conviction of any offense in violation of 18 U.S.C. §§ 1341, 1343, or 1349, involving telemarketing, as set forth in this indictment, the defendants shall forfeit to the United States of America any real or personal property: 1) used or intended to be used to commit, to facilitate, or to promote the commission of such offense and scheme; and 2) constituting, derived from, or traceable to the gross proceeds that the defendants obtained directly or indirectly as a result of the offense and scheme. The property to be forfeited includes, but is not limited to, the following:

- A money judgment equal to the value of 1) any real or personal property used or intended to be used to commit, to facilitate, or to promote the commission of the telemarketing fraud scheme and 2) the gross proceeds obtained directly or indirectly as a result of the telemarketing fraud scheme.

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, as set forth in this indictment, the defendant shall forfeit to the United States of

America any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

- A money judgment equal to all property involved in the money laundering charges.

SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with, a third person;

    (3) has been placed beyond the jurisdiction of the court;

    (4) has been substantially diminished in value; or

    (5) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 982(b)(1), and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above-forfeitable property.

A TRUE BILL:

/S/
_____
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

_____
JACOB J. STRAIN
Assistant United States Attorney